UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOLLY E. FEREBEE, for herself and others similarly situated,<br><br>        Plaintiffs,<br><br>v.,<br><br>NYCOLE MACKLIN;  SCOTT A. PETRI, II; DENNIS G. WELDON, JR; PHILADELPHIA PARKING AUTHORITY; MICHAEL GIUNTA; CITY OF PHILADELPHIA; JOHN DOE NO. 1; JOHN DOE NO. 2, & OMIKA BARNES<br><br>        Defendants. | No. 22-1155-KSM |

## First Amended Class-Action Complaint

The defendants are government actors who impounded and sold Dolly E. Ferebee's motor vehicle without due process of law. Ms. Ferebee brings the claims specified below for herself and others similarly situated under 42 U.S.C. § 1983 and avers:

### Parties

1.  The plaintiff is Dolly E. Ferebee, a citizen of Pennsylvania residing at 4012 Chippendale Street Philadelphia PA 19136.

2.  Nycole Macklin is employed as a manager of the towing and impound unit of the Philadelphia Parking Authority, 701 Market Street, Suite 5400 Phila., PA 19106. Ms. Macklin is named as a defendant in her personal and official capacity.

3.  Scott A. Petri is the chief executive officer of the Philadelphia Parking Authority. He is named as a defendant in his personal and official capacity.

4.  Dennis G. Weldon, Jr., is the general counsel at the Philadelphia Parking Authority, 701 Market Street, Phila., PA 19106.

5.  The Philadelphia Parking Authority ("Parking Authority" or "PPA") is a state-chartered unit of government that qualifies as a person under 42 U.S.C. § 1983. *Bolden v. Southeastern Pennsylvania Transp. Authority*, 953 F.2d 807 (3rd Cir. 1991).

6.  Michael Giunta is the chief administrative officer of the Bureau of Administrative Adjudication ("BAA") which is part of the government of the City of Philadelphia Pennsylvania. Mr. Giunta is named as a defendant in his personal and official capacity.

7.  The BAA adjudicates car owners' liability on parking tickets.

8.  The City of Philadelphia is a unit of municipal government in the Commonwealth of Pennsylvania.

9.  Omika Barnes is a hearing officer for the City of Philadelphia, Bureau or Administrative Adjudication, who presided over a hearing given to plaintiff Dolly Ferebee on or about February 13, 2020.

10.  John Doe No. 1 represents one or more employees of the Philadelphia Parking Authority responsible for impounding and auctioning vehicles without due process of law as described below or for demanding payment of money from car owners.

11.  John Doe No. 2 represents one or more employees of the City of Philadelphia responsible for adjudicating liability on parking tickets or demanding payment for parking tickets in connection with impounded vehicles.

12. All individual defendants were acting within the scope of their employment and under color of state law at all times during the events in this complaint.

## Background

13. Ms. Ferebee was the owner of a 2010 Dodge Grand Caravan, VIN 2D4R N3D1 0AR4 1161 6, PA tag KGP6113 (the "Vehicle"), valued at about $7,500.

14. Ms. Ferebee acknowledges that by February 2020, five parking tickets had been issued against the Vehicle for unpaid parking violations totaling $507.00. Exhibit P-1 at 1.

15. On February 11, 2020, the PPA impounded the car and towed it to a lot at 4701 Bath Street, Phila., PA 19137.

16. On February 12, 2020, following the impoundment, defendant Nycole Macklin on behalf of the Parking Authority sent Ms. Ferebee a notice of the impoundment of the Vehicle. Exhibit P-2.

17. The notice informed Ms. Ferebee of the impoundment, the location of the vehicle, and provided other information pertinent to recovering the Vehicle and the potential auction of the vehicle if not recovered. Exhibit P-2.

18. The notice of impoundment was based on a form used by the Parking Authority. The same form is sent to all people whose car is impounded under similar circumstances.

19. The notice instructed Mr. Ferebee that she could recover the Vehicle by "pay[ing] all outstanding parking tickets issued *to this vehicle*." Exhibit P-2 (emphasis added).

20.  The notice did not state the amount of money the Parking Authority was demanding for Ms. Ferebee to pay to retrieve her Vehicle.

21.  The notice further instructed that "if this vehicle is not recovered within fifteen (15) days of the date of this notice, the Philadelphia Parking Authority will petition the Philadelphia Court of Common Pleas to sell this vehicle at public auction." Exhibit P-2.

22.  The notice did not state a specific reason why Ms. Ferebee's vehicle was impounded.

23.  The notice stated that she could retrieve the vehicle by making payment of fines, fees, and cost to the Parking Violations Branch at 913 Filbert Street, Philadelphia, PA 19107.

24.  In the days immediately after the impoundment, Ms. Ferebee made several trips to the office at 913 Filbert Street.

25.  This complaint refers to the office at 913 Filbert Street by its address because it is unclear whether people with whom Ms. Ferebee interacted at that address were employed by the Philadelphia Parking Authority or the Bureau of Administrative Adjudication (the City of Philadelphia).

26.  Ms. Ferebee went to 913 Filbert Street with the expectation that she would be able to pay the $507 of tickets against the Vehicle together with costs and have the vehicle released back to her.

27.  To Ms. Ferebee's surprise, the personnel at 913 Filbert Street demanded payment of $3,705 to retrieve her Vehicle.

28.  An employee at 913 Filbert Street looked up all of the tickets to "Dolly Ferebee" and produced a printout of tickets that included tickets for the plaintiff, Dolly E. Ferebee, along with tickets for her mother, who is also named Dolly Ferebee. Exhibit P-1.

29.  Some of the tickets issued to Ms. Ferebee's mother dated back to the 1970s when the plaintiff was a child and all of the tickets were issued for vehicles other than the impounded Vehicle Ms. Ferebee was seeking to recover.

30.  Ms. Ferebee protested being held liable for tickets issued to her mother for vehicles other than the impounded Vehicle.

31.  Over the next several days, Ms. Ferebee returned to the office at 913 Filbert Street several times with proof that her mother had the same name. Ms. Ferebee showed evidence of her mother's identity to the personnel at 913 Filbert Street and clearly expressed her objection to being charged for her mother's tickets.

32.  Ms. Ferebee had several meetings with people at 913 Filbert Street. It was not clear whether any of the meetings counted as hearings because the meetings were informal, and when Ms. Ferebee requested records of hearings, the BAA denied having any records. Exhibit P-3.

33.  Finally, after being sued, the BAA admits to having at least one record which is a recording of a hearing on February 13, 2020.

34.  On every visit Ms. Ferebee made to 913 Filbert Street, she continued to be told that she had to pay $3,705 to retrieve her Vehicle. Beyond the $507 Ms. Ferebee admitted owing and the fees and costs for the impoundment, all of the additional funds the PPA demanded were for tickets issued to vehicles other than the impounded Vehicle.

35.  The other vehicles had been owned by Ms. Ferebee's deceased mother, but because the PPA mistook Ms. Ferebee's identity for her mother, the PPA attributed ownership of the other vehicles to Ms. Ferebee.

36.  Because the PPA mistook Ms. Ferebee's identity for her mother's, none of the tickets that had been issued to her mother had ever been served on Ms. Ferebee.

37.  The personnel at 913 Filbert Street demanded payment from Ms. Ferebee for tickets issued to vehicles other than the impounded Vehicle based on Philadelphia Code section 12-2406(2), which requires car owners to pay for tickets issued to all of the cars they have ever owned as a condition for retrieving any car out of impoundment. Phila. Code § 12-2406(2).

38.  On February 24, 2020, Dennis F. Weldon, Jr., filed a petition with the court of common pleas requesting authorization for the Parking Authority to sell Ms. Ferebee's vehicle at an auction on March 12, 2020. Exhibit P-4.

39.  Attached to the petition as Exhibit "A" was a list of about 110 cars the Parking Authority proposed to auction.

40.  The list indicated the amount of money owed to the Parking Authority for fines, fees, and costs for each vehicle.

41.  Ms. Ferebee's Vehicle was on the list with a statement that she owed $1,063.27. Exhibit P-4 at 24.

42.  Ms. Ferebee never saw the list with its statement of the fines and costs due on her Vehicle.

43. Ms. Ferebee would have been able to pay $1,063.27 to retrieve her Vehicle if the Parking Authority or Bureau of Administrative Adjudication told her that was the amount of her debt.

44. The Parking Authority's petition to authorize the sale of her vehicle was not served on Ms. Ferebee. Instead of being served with the petition, Ms. Ferebee was served with the impoundment notice (Exhibit P-2), which was supposed to be a substitute for the petition, but the impoundment notice did not state the amount Ms. Ferebee was being asked to pay to retrieve her vehicle, whereas the petition did.

45. Mr. Weldon's petition was filed with the court of common pleas under General Court Regulation 96-1, 26 Pa. B. 2489.

46. General Court Regulation 96-1, 26 Pa. B. 2489, outlines the procedure for selling impounded vehicles pursuant to court order under section 6310 of the Pennsylvania Vehicle's Code. 75 Pa. C. S. § 6310.

47. Under General Regulation 96-1, a car owner needs only to pay the fines, fees, and costs issued against the impounded vehicle to retrieve it. The regulation states that "[a]t any time prior to the auction date, any owner of record or lienholder of record may reclaim the motor vehicle upon the payment of the fines, fees and costs assessed against the *said motor vehicle*." General Court Regulation 96-1 at ¶ 4,  26 Pa. B. 2489 (emphasis added).

48. Every petition filed by the PPA for the authorization to sell impounded vehicles for unpaid parking tickets is filed under General Court Regulation 96-1 under which every car owner has the right to reclaim the vehicle up to the date of sale solely by payment of the tickets issued against the impounded vehicle.

49. Every court order issued on a petition to sell vehicles is issued under General Court Regulation 96-1 which allows vehicle owners to reclaim their vehicles up to the date of the auction and only for tickets issued against the impounded vehicle and not other vehicles.

50. Although the Philadelphia City Council is supposed to have amended Philadelphia Code section 12-2406(2) in 2013 to require payment of all tickets owed on any car owned by the owner of an impounded car, General Court Regulation 96-1 was never revised to account for the change in the ordinance, and the PPA has continued to file petitions under General Court Regulation 96-1 as if the ordinance was never amended.

51. Specifically, Mr. Weldon has filed the exact same form petition for authorization to sell Ms. Ferebee's vehicle in 2020 as he filed in 2012 before the ordinance was amended. *See* Exhibit P-5.

52. As far as plaintiff can tell, every petition for authorization to sell impounded vehicles filed by Mr. Weldon seeks authorization to sell the vehicles solely on account of the tickets issued to the impounded vehicle instead of all tickets generally issued to the vehicle owner.

53. The court signed an order granting the petition filed by Mr. Weldon to sell Ms. Ferebee's Vehicle on February 24, 2020, the same day the petition was filed, granting the Parking Authority permission to auction the Vehicle pursuant to General Court Regulation 96-1 to collect $1,063.27. Exhibit P-6.

54. The order (Exhibit P-6) was subsequently served on Ms. Ferebee and other car owners informing them that the court granted authority to PPA to auction their vehicles.

8

55.  The order states that the PPA has authority to auction the vehicles, but does not state that the car owners have until the date of the auction to claim their vehicles.

56.  The order does not state the official amount of indebtedness for which the PPA sought and was granted permission to sell the impounded vehicles.

57.  The order does not authorize the PPA to collect ongoing fees and costs for storage of the vehicle up to the date of sale.

58.  The order (Exhibit P-6) and the notice of the order were the only documents served on Ms. Ferebee and other car owners. At no time was the petition or exhibit "A" to the petition served on Ms. Ferebee or any car owners.

59.  There is no way Ms. Ferebee or any other car owner would know from the order (Exhibit P-6) that he or she had until the date of the auction to retrieve their cars. The order (Exhibit P-6) reinforces the erroneous inference from the impoundment notice that car owners only have 15 days to retrieve their vehicles, when, in fact, car owners have 30 days to retrieve their vehicles.

60.  At no point in the impoundment process was Ms. Ferebee or any other car owner served with notice of the  amount of indebtedness officially calculated by the PPA for presentation to the court of common pleas in the petition to authorize the sale of their vehicles.

61.  If the official amount of indebtedness presented to the court of common pleas by the PPA is different from the amount informally demanded by PPA or BAA, there is no way for Ms. Ferebee or any other car owner to know the difference.

62.  Indeed, the personnel at the PPA who prepare and file the petition for authorization to sell impounded vehicles do not seem to share their official calculation of

indebtedness for each vehicle with other employees of the PPA or BAA, so they are informed of the correct amount.

63. There is no way for a car owner who allegedly owes tickets on multiple vehicles to learn that the PPA's official calculation of indebtedness presented to the court of common pleas under General Regulation 96-1 does not include tickets owed on vehicles besides the impounded vehicle.

64. The impoundment notice is sent to car owners as a substitute for service of the petition, but the impoundment notice is a flawed substitute because it does not state that car owners have until the date of the auction to recover their vehicles or state the official amount of indebtedness the PPA seeks authorization to collect.

65. The lack of this information made the impoundment notice meaningless.

66. Omika Barnes, the BAA officer who presided over the February 13, 2022, hearing, did not know the official amount of indebtedness for which the PPA was seeking payment consisted only of tickets against Ms. Ferebee's impounded vehicle in the amount of $1,063.27.

67. As a result, the hearing Ms. Ferebee had at the BAA before Ms. Barnes was meaningless. Ms. Ferebee and Ms. Barnes had a hearing over an amount of indebtedness the PPA was not actually seeking to collect.

68. Ms. Barnes did not inform Ms. Ferebee that she had 30 days to appeal Ms. Barnes' ruling to the court of common pleas.

69. All of the verbal notices Ms. Ferebee received from Ms. Barnes and others employees of the PPA and BAA were false. All of the notices falsely informed Ms. Ferebee she was liable for tickets issues to several vehicles besides the impounded

Vehicle when, in fact, the PPA was only seeking payment for tickets issued against the impounded Vehicle in the amount $1,063.27, which Ms. Ferebee was ready and willing to pay.

70.   Following Ms. Ferebee's hearing on February 13, 2020, Ms. Ferebee had 30 days to appeal the hearing officer's ruling to the court of common pleas.

71.   Ms. Ferebee's appeal period lasted until March 16, 2020, yet the PPA exposed Ms. Ferebee's vehicle to auction on March 12, 2020, before the appeals period expired.

72.   In fact, every car that was sold on March 12, 2020, was sold during the appeal period for any car owner who had a hearing within the previous 30 days.

73.   On or about June 16, 2022, the court of common pleas entered an order confirming the sales of the vehicles at the auction to various purchasers and authorizing issuance of titles in the names of the purchasers. Exhibit P-7.

74.   Ms. Ferebee's Vehicle was sold for $2,800.

75.   The Parking Authority then told Ms. Ferebee that it took $1,646.77 from the auction proceeds to pay for fines and costs even though it only had authority from the court to collect $1,063.27.

76.   The PPA demanded payment from Ms. Ferebee of $3,705 when in fact the PPA only took $1,646.77 from the auction proceeds.

77.   Ms. Ferebee was ready and willing to pay  $1,646.77 to retrieve her car from impoundment, but neither the PPA nor the BAA gave Ms. Ferebee accurate notice of the amount she was required to pay.

Class Allegations

78.  Ms. Ferebee seeks to represent a class defined as:

(a).  The owners of motor vehicles impounded by the Philadelphia Parking Authority for unpaid parking tickets:

(b).  Impounded within two years preceding the filing of this complaint, or,

(c).  to be impounded in the future,

(d).  for unpaid parking tickets,

(e).  including parking tickets issued against vehicles other than the impounded vehicle, and

(f).  were sold or disposed of by the PPA.

79.  Plaintiff will need to obtain discovery to determine the exact size of the class, but based on the large number of petitions the Parking Authority files with the Court of Common Pleas for authorization to sell impounded vehicles there is reason to believe that the class is too large to join in one action.

80.  The PPA files multiple petitions each month to expose thousands of vehicle for sale, and the official notice sent to every car owner tells them they have only 15 days to retrieve their vehicles when in fact they have about 30 days to retrieve their vehicles.

81.  There are questions of law common to the class, including: (1) whether the Parking Authority's form impoundment notice is reasonably calculated under all of the circumstances to inform car owners of the nature of the action against them and how to respond, specifically: (a) whether the notice misleads car owners by not stating that they have until the auction date to retrieve their vehicles, (b) whether the notices should state

the debt the Parking Authority is seeking to collect, (c) whether the notice should itemize the tickets a car owner is alleged to owe, so the car owner can determine whether or not they should object to the tickets, (2) whether the Parking Authority or the Bureau of Administrative Adjudication can condition the release of impounded vehicles on the payment of tickets for other vehicles when all of the petitions the PPA files for authority to sell impounded vehicles are filed under General Administrative Regulation 96-1; (3) whether Philadelphia Code section 12-2406(2) constitutes a valid exercise of the city's home rule authority in the absence of express authorization under the Vehicles Code for the imposition of a statutory lien on one vehicle for tickets issued to another vehicle; (f) whether the PPA is selling vehicles before the expiration of the appeals period for people who are given hearings within 30 days of the auction date?

82. Ms. Ferebee's claims are typical of the claims of other proposed class members. The arguments for and against Ms. Ferebee's causes of action will be the same for all class members.

83. Ms. Ferebee will fairly and adequately represent the interests of class members. Counsel will adequately represent the class; Ms. Ferebee does not have any conflicts of interest, and the case should not involve any expenses beyond the plaintiff's reach.

84. The prosecution of separate actions by individual class members could risk inconsistent decisions even though a decision for or against Ms. Ferebee should be dispositive of the claims of all potential plaintiffs in Ms. Ferebee's position.

85. The defendants have acted on grounds that apply generally to the class so that final injunctive and declaratory relief is appropriate for the class as a whole. The PPA

should be enjoined from providing inaccurate notice of the amount of time people have to retrieve their cars from impoundment or from providing inaccurate notice of the amount people are required to pay to retrieve their cars from impoundment. Enjoining these practices is the most important relief this case can achieve.

86. Common questions predominate over questions pertaining to individual class members such that a class action is a superior means to adjudicate the case. All class members have suffered a similar injury and need similar relief. Class members have suffered the loss of their cars because they were given erroneous notice of the amount of time they had to retrieve their cars, inaccurate notice of the amount of money they had to pay, or had their cars sold prior to the expiration of the appeals period on any proceeding they initiated to contest the impoundment of their vehicles.

## Count I

87. This count is by Ms. Ferebee and the class against all of the defendants under 42 U.S.C. § 1983 for being deprived of property without due process of law in violation of the Fourth and 14th Amendments of the United States constitution. All of the preceding paragraphs are incorporated by reference.

88. The defendants deprived Ms. Ferebee and the class of procedural due process.

89. The standard form impoundment notice (Exhibit P-2) issued to Ms. Ferebee was not reasonably calculated, under all of the circumstances, to apprise her of the action against her and the information she needed to protect her rights:

(a). The notice failed to inform Ms. Ferebee that she had until the proposed auction date on March 12, 2020, to reclaim her Vehicle.

14

(i).  Instead of informing Ms. Ferebee that she could reclaim her Vehicle up to the date of the auction on March 12, 2020, the notice stated that the PPA would file a petition to authorize the sale of the Vehicle after 15 days, on February 24, 2020.

(ii).  Stating the date the PPA will file the petition implies that the right to reclaim the vehicle ceased after 15 days even though the right continued for an additional two weeks until March 12, 2020, per General Court Regulation 96-1. The only date relevant to car owners is the deadline for retrieving their cars, not the date the parking authority will file a petition with the court of common pleas that is not even served on car owners.

(iii).  If Ms. Ferebee knew she had an additional two weeks to retrieve her vehicle she would have had double the times to amass the funds necessary for the Vehicle's retrieval, and she believes she would have gotten the necessary funds. She would have had income from an additional pay period. Many class members would be able to amass the money to retrieve their vehicles if they new they had 30 days to claim their vehicles instead of only 15 days.

(iv).  It is unconscionable for the PPA to issue an impoundment notice that misleads car owners to believe they have only 15 days to retrieve their vehicles when they actually have 30 days, and the misleading nature of the notice is not remediated by the possibility that some owners might discover they were misled if they look up the law.

15

(b). The notice failed to inform Ms. Ferebee of the amount she had to pay to retrieve her vehicle from impoundment.

(i). The amount of money the Parking Authority is seeking to collect from car owners to retrieve their vehicles is the single most important piece of information a car owner needs to respond to the impoundment, yet it is not stated. The impoundment notice is, in effect, a collection letter that fails to inform debtors of the amount they owe. The notice should state the total amount of allegedly past due parking tickets with an itemization of each ticket, sufficient for the car owner to understand the amount owed, determine whether certain tickets are objectionable, and determine the evidence they need to defend themselves. In cases of mistaken identity, such as the present case, the owner of the impounded vehicle will not have been previously served with notice of parking tickets issued to someone else.

(ii). Service of the impoundment notice on car owners is supposed to be a substitute for service of the petition (Exhibit P-4), which is not served on car owners, so the notice should contain equivalent information as the petition, including (1) the amount of the debt the PPA is seeking to liquidate in the petition, and (2) that car owners have until the auction to claim their vehicles.

90. Ms. Ferebee was denied due process by being given notice to pay an erroneous amount for the retrieval of her car.

(a). The Parking Authority sought and obtained authorization to auction Ms. Ferebee's Vehicle under General Court Regulation 96-1 at ¶ 4, 26 Pa.

B. 2489.  Under the regulation, Ms. Ferebee should have been allowed to obtain the return of her car for a payment of $1,063.27 as stated in the PPA's petition, representing only the tickets issued against the impounded vehicle. Exhibit P-4 at 24.

(b).  Every petition filed by the Parking Authority to auction motor vehicles for nonpayment of parking tickets is filed under General Court Regulation 96-1, and every order issued by the court of common pleas authorizing the sale of vehicles is issued under General Court Regulation 96-1.

(c).  Under the regulation, car owners are allowed to retrieve their vehicles by paying only for the tickets issued against the impounded vehicle, so car owners should not be told by the PPA or the BAA that the return of their vehicles is conditioned upon payment of tickets issued to other vehicles.

(d).  A notice to car owners demanding payment of tickets issued to vehicles other than the impounded vehicle violates due process because it is erroneous, misleading, and meaningless. Every verbal notice Ms. Ferebee received from personnel from the PPA or BBA demanding payment of funds owed on cars other than Ms. Ferebee's impounded car was erroneous, misleading, and meaningless.

(e).  A hearing in which the BAA conditions the return of an impounded vehicle on payment of tickets issued to vehicles other than the impounded vehicle is conducted under an erroneous legal standard that does not reflect the car owner's actual legal rights and is therefore erroneous, misleading, and meaningless.

(f).  Philadelphia Code section 12-2406(2), which conditions the return of impounded vehicles on payment of tickets issued to vehicles other than an impounded, is not a valid exercise of Philadelphia's home rule authority under the Pennsylvania Vehicles Code. Notice to pay a debt pursuant section 12-2406(2) violates due process because it is erroneous, misleading, and meaningless.

(g).  The Vehicles Code is supposed to be uniformly applied throughout the Commonwealth of Pennsylvania. 75 Pa. C. S. § 6101. "[N]o local authority shall enact or enforce any ordinance on a matter covered by the provisions of . . . [the Vehicles Code] unless expressly authorized." *Id.*

(h).  There is no express authorization in the Vehicles Code for the City of Philadelphia or the PPA to impose a statutory lien on one car for tickets issued against another car.

(i).  There is no express authorization in the Vehicles Code for the City of Philadelphia or the Parking Authority to apply auction proceeds to debts for parking tickets other than tickets issued against the impounded vehicle that has been auctioned.

(j).  The City of Philadelphia's imposition of a statutory lien upon an impounded motor vehicle for tickets issued to another vehicle is not expressly authorized by the Pennsylvania Vehicles code and is beyond the City's home rule authority.

91.  The PPA or the BAA violated Ms. Ferebee's right to due process under 14th Amendment by failing to provide her with a meaningful hearing. The hearing conducted by Ms. Barnes was meaningless because Ms. Barnes did not know that the PPA

was seeking authority to sell Ms. Ferebee's vehicle for $1,063.27, only for tickets that had been issued against the vehicle, and not for tickets that had been issued against other vehicles the PPA mistakenly thought belonged to Ms. Ferebee. Ms. Barnes conducted an entire hearing on the subject of a debt the PPA was not actually trying to collect.

92. Ms. Ferebee was denied due process because the PPA sold her Vehicle prior to expiration of her period to appeal Ms. Barnes' ruling to the court of common pleas. The order resulting from her hearing at the BAA had not yet become final for execution on the date Ms. Ferebee's car auctioned away.

93. Ms. Ferebee was denied due process because Ms. Barnes did not inform Ms. Ferebee of her right to appeal to the court of common pleas.

WHEREFORE, plaintiff requests the following relief:

(a). Certification of a class as specified;

(b). A declaration that the form impoundment notice issued to Ms. Ferebee violated her due process rights by (1) misleading her as to how long she had to retrieve her Vehicle from impoundment, (2) failing to state the amount of the city's demand for payment against Ms. Ferebee, and (3) failing to include an itemization of the demand for payment specifying the tickets for which Ms. Ferebee was alleged to be liable.

(c). A declaration that the Parking Authority and the City of Philadelphia violated the due process rights of Ms. Ferebee and the class by conditioning the return of their vehicles on the payment of tickets that were never issued to the Vehicle because (i) there is no statutory lien against an impounded vehicle for the payment of tickets issued to other vehicles under General Court

19

Regulation 96-1 at ¶ 4,  26 Pa. B. 2489, or (ii) because Philadelphia Code § 12-2406(2) is not a valid exercise of the City's home rule authority.

(d).  Order the City of Philadelphia and the Parking Authority to revise its form impoundment notice to (i) inform car owners that they have until the date of the auction to retrieve their cars, and (ii) state the amount of fines against the impounded vehicle, and (3) to include an itemized list of tickets against the impounded vehicle.

(e).  Enjoin enforcement of Philadelphia Code section 12-2406(2) to the extent it requires vehicle owners to pay for tickets in excess of tickets issued to an impounded vehicle to obtain the return of the vehicle from the Parking Authority.

(f).  Award damages to vehicle owners who have lost their cars because they were not given accurate notice of the time to retrieve their vehicles from impoundment,  were given inaccurate notice of the amount they had to pay to get their vehicle released from impoundment, or whose vehicle were sold at auction before the expiration of their appeal period in a proceeding before the BAA.

(g).  Award damages to Ms. Ferebee for the loss of her Vehicle.

(h).  Award plaintiff attorney's fees and costs.

(i).  Grant Ms. Ferebee and the class any other relief that is just and appropriate.

## Count II

94.  This count is for declaratory judgment under 42 Pa.C.S. § 7531 against the City of Philadelphia and PPA on behalf of Ms. Ferebee and the class. All of the preceding paragraphs are incorporated by reference.

95.  Philadelphia Code section 12-2406(2) is not a valid exercise of the city's home rule authority because there is no express authorization in the Pennsylvania Vehicles Code for a parking ticket issued against one vehicle to become a lien on another vehicle.

96.  There is no express authority under the Pennsylvania Vehicles Code to apply the proceeds of the sale of one vehicle to tickets issued against other vehicles.

WHEREFORE, plaintiff requests the court to:

(a). Declare that Philadelphia Code section 12-2406(2) is an invalid exercise of the City of Philadelphia's home rule authority and is unenforceable;

(b). Enjoin the city from enforcing the ordinance;

(c). Award damages to Ms. Ferebee and to class members whose cars were sold at auction because the defendants conditioned the release of their vehicles on payment of tickets issued against other vehicles; and

(d). Award any other relief that is just and appropriate.

Respectfully submitted,

_____
Robert F. Salvin (RFS2522)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA  19004
215-300-2388
215-271-2820 (fax)
robert.salvin@outlook.com