**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DOLLY E. FEREBEE,** *for herself and other similarly situated*, | **CIVIL ACTION** |
| Plaintiff, | **NO. 22-1155-KSM** |
| *v.* | |
| **NYCOLE MACKLIN, et al.,** | |
| Defendants. | |

## MEMORANDUM

**Marston, J.**                                                                                           **June 3, 2022**

      Following the impoundment and sale of her car, Plaintiff Dolly Ferebee, on behalf of herself and others similarly situated, sued the Philadelphia Parking Authority ("PPA"), Nycole Macklin, Scott A. Petri, and Dennis G. Weldon, Jr. (the "PPA Defendants") and the City of Philadelphia and Michael Giunta (the "City Defendants") (collectively, "Defendants") in the Philadelphia Court of Common Pleas for violating her constitutional due process rights.  (Doc. No. 1-2.)  Plaintiff brings her claims under 42 U.S.C. § 1983.  (*Id.*)  The PPA Defendants, with the consent of the City Defendants, removed the case to federal court on the basis of federal question jurisdiction.  (Doc. No. 1.)

      Presently before the Court is Plaintiff's Motion to Remand to State Court (Doc. No. 11). For the reasons that follow, the Court denies Plaintiff's motion.

### I.    Background

      Taking the facts in the light most favorable to Plaintiff, the relevant facts are as follows.

### A.  The Underlying State Court Action

Plaintiff owned a 2010 Dodge Grand Caravan.  (Doc. No. 1-1 ("Compl.") at ¶ 12.)  By February 2020, "five parking tickets had been issued against [Plaintiff's] Vehicle for unpaid parking violations totaling $507.00."  (*Id.* at ¶ 13.)  On February 11, 2020, the PPA impounded Plaintiff's car and towed it to a lot at 4701 Bath Street, Philadelphia, PA 19137.  (*Id.* at ¶ 14.)  The next day, on February 12, Macklin, on behalf of the PPA, sent Plaintiff a notice that her vehicle had been impounded.  (*Id.* at ¶ 15; *see also* Doc. No. 1-1, Ex. P-2 at 31–32.)

The notice informed Plaintiff of the impoundment and the vehicle's location, provided information related to how to recover the vehicle, and warned that the vehicle may be auctioned if she did not recover it.  (Compl. at ¶ 16; *see also* Doc. No. 1-1, Ex. P-2 at 31–32.)  Specifically, the notice stated that to recover her vehicle, Plaintiff must "pay all outstanding parking tickets issued to [the] vehicle," as well as the towing fee of $175.00 and a storage charge of $30.63 per day.  (Doc. No. 1-1, Ex. P-2 at 31.)  The notice also informed Plaintiff that she was "entitled to an administrative hearing as described in Chapter 2800 of the Philadelphia Code" and that she could "do this by appearing at the Bureau of Administrative Adjudication, 913 Filbert Street, Philadelphia, PA 19107" during its listed business hours.  (*Id.*)  The notice provided that if Plaintiff did not recover her vehicle "within fifteen (15) days of the date of th[e] notice," the PPA would petition the Philadelphia Court of Common Pleas to sell it.  (*Id.*; *see also id.* ("A petition to sell this vehicle will be filed with the Court requesting leave to sell this vehicle at public auction on 03/12/2020 at the 12:00 PM[.]"); *id.* at 32 ("THIS IS THE FINAL NOTICE THAT YOU WILL RECEIVE BEFORE THE COURT ENTERS AN ORDER AUTHORI[Z]ING THE SALE OF THIS VEHICLE.  IF YOU DO NOT RECLAIM THIS VEHICLE, THE COURT OF COMMON PLEAS WILL ISSUE AN ORDER GRANTING THE PETITION AS SET FORTH

ABOVE AND AUTHORIZING THE SALE OF YOUR VEHICLE AT THE PUBLIC
AUCTION SET FORTH ABOVE, YOUR INTEREST WILL BE EXTINGUISHED, AND
OWNERSHIP WILL VEST TO THE SUCCESSFUL BIDDER.").)

After the impoundment, Plaintiff made several trips to the 913 Filbert Street office.  (*Id.*
at ¶ 25; *see also id.* at ¶ 26 ("This complaint refers to the office at 913 Filbert Street by its
address because it is unclear whether [the] people with whom Ms. Ferebee interacted at that
address were employed by the [PPA] or the Bureau of Administrative Adjudication.").)  Plaintiff
intended to pay the $507 owed for her unpaid parking tickets, along with costs, and have her
vehicle released.  (*Id.* at ¶ 27.)  But, to her surprise, the personnel at the 913 Filbert Street office
demanded she pay $3,705 to retrieve the vehicle.  (*Id.* at ¶ 28.)  An employee at that office
provided Plaintiff with a printout of all of the unpaid tickets associated with Plaintiff's name
"Dolly Ferebee," which included Plaintiff's tickets as well as tickets issued to her deceased
mother, who was also named Dolly Ferebee.  (*Id.* at ¶ 29.)  None of the tickets issued to
Plaintiff's mother were related to Plaintiff's impounded car at issue, and in fact several of the
Plaintiff's mother's tickets dated back to the 1970s when Plaintiff was only a child.  (*Id.* at ¶ 30.)
Plaintiff protested being held liable for her deceased mother's tickets and returned to the office
several times with evidence of her mother's identity.  (*Id.* at ¶¶ 31–32.)  Nonetheless, Plaintiff
was repeatedly told that she had to pay the full $3,705 in order for her impounded vehicle to be
released (*id.* at ¶ 35) and was never provided with the opportunity for a hearing (*id.* at ¶¶ 34–35).

On February 24, the PPA filed a petition with the Court of Common Pleas, requesting
authorization to sell Plaintiff's vehicle at an auction on March 12.  (*Id.* at ¶ 37.)  This petition
was never served on Plaintiff.  (*Id.* at ¶ 43.)  Attached to the petition was a list of about 110
vehicles the PPA proposed to auction (including Plaintiff's vehicle), which indicated the amount

of money owed to the PPA for each vehicle.  (*Id.* at ¶¶ 38–39.)  The list indicated that Plaintiff

owed $1,064.27 for the fines and costs associated with her vehicle.  (*Id.* at ¶ 40.)  Plaintiff never

saw the list but avers that she would have been able to pay $1,063.27 to retrieve her vehicle if

she had been told that was her debt, rather than the $3,705 figure.  (*Id.* at ¶¶ 41–42.)

The Court of Common Pleas granted the petition the same day it was filed.  (*Id.* at ¶ 48.)

This gave the PPA the authority to auction Plaintiff's vehicle to collect $1,063.27.  (*Id.*)  On

March 12, 2020, Plaintiff's vehicle was purchased by a third party at an auction for $2,800.  (*Id.*

at ¶¶ 49–51.)  The PPA took $1,646.77 from the proceeds of the auction to pay for the fines and

costs, even though it only had the authority to collect $1,063.27.  (*Id.* at ¶ 52.)

### B.  *The Applicable Codes*

Philadelphia Code § 12-2406 governs the recovery of impounded vehicles.  Section 12-

2406(2) provides, "The owner . . . may obtain immediate release of the vehicle by the payment in

full of all delinquent parking tickets issued to any and all vehicles registered in the name of the

owner of the vehicle that is to be recovered, booting and/or towing fee and accrued storage

charges."  Plaintiff alleges that this provision is preempted by the Pennsylvania Motor Vehicle

Code § 6101(a) (*see* Doc. No. 1-1 at ¶ 62(e)–(f)), which states:  "[N]o local authority shall enact

or enforce any ordinance on a matter covered by the provisions of this title unless expressly

authorized," 75 Pa. Stat. and Cons. Stat. Ann. § 6101(a).

Section 6109(a) of the Motor Vehicle Code states that its provisions "shall not be deemed

to prevent the . . . local authorities on streets or highways within their physical boundaries from

the reasonable exercise of their police powers," which includes "regulating or prohibiting

stopping, standing or parking."  *Id.* § 6109(a).  In turn, Section 6109(f) of the Motor Vehicle

Code provides, "Nothing contained in this section shall be deemed to prevent local authorities by

ordinance or resolution of the local governing body from delegating their powers . . . to a parking authority." *Id.* § 6108(f).  Further, the Code states, "[T]he parking authority of a city of the first class shall *enforce and administer* the system of on-street parking regulation in a city of the first class on behalf of the city." *Id.* § 6109(g)(1) (emphasis added); *see also id.* § 6109(g)(5) (defining "administer" as "provid[ing] any services or materials necessary to enforce any ordinance or resolution enacted in order to regulate or prohibit, the stopping, standing or parking of motor vehicles" and "enforce" as the "issuance of parking violation notices or citations, the immobilization, towing and impoundment of motor vehicles and the collection of fines, penalties, costs and fees . . . for violations of any ordinance or resolution enacted in order to regulate or prohibit the stopping, standing or parking of motor vehicles").

Last, Philadelphia County President Judge General Court Regulation 96-1, 26 Pa. B. 2489, includes a Procedure for the Sale of Impounded or Seized Motor Vehicles.  It provides that the City and/or the PPA may sell motor vehicles at a public auction if certain procedures are followed, including submitting a petition to the state court "setting forth the efforts made to notify the owners of record . . . to reclaim the vehicles . . . [and] that if the vehicles are not reclaimed they shall be sold at auction on a specific date." 26 Pa. B. 2489 at ¶ 3.  It also states, "At any time prior to the auction date, any owner of record . . . may reclaim the motor vehicle upon the payment of the fines, fees and costs assessed against the said motor vehicle, as set forth in the notice and as may be incurred thereafter." *Id.* at ¶ 4.

### C. *Procedural History*

On February 10, 2022, Plaintiff initiated this action in state court, alleging that Defendants impounded and sold her vehicle without due process of law, in violation of the First, Fourth, and Fifteenth Amendments.  (*See generally id.*)  Plaintiff brings her claims under 42

U.S.C. § 1983.  In her complaint, Plaintiff alleges, among other things, that the standard impoundment notice she received was deficient and that Defendants failed to give her a hearing when she contested the amount due to recover her car.

On March 25, 2022, the PPA Defendants, with the City Defendants' consent, removed the case to federal court, asserting that this Court has jurisdiction over the matter because Plaintiff's § 1983 claim arises under federal law.  (Doc. No. 1.)  Plaintiff moved to remand. (Doc. No. 11.)  In her motion to remand, Plaintiff argues that this Court should abstain from ruling on Plaintiff's federal constitutional claims under *Railroad Commission of Texas v. Pullman*, 312 U.S. 496 (1941) because one of the bases of Plaintiff's *federal* due process claims is her argument that "Philadelphia Code § 12-2406 is preempted by the Pennsylvania Vehicles Code," which is a "matter of *state law* that can only finally be  determined by the Pennsylvania courts."  (*Id.* at 4, 6 (emphasis added).)  Defendants oppose the motion.  (Doc. No. 14.)

## II.    Discussion

Plaintiff argues that we should remand the matter to state court because the *Pullman* abstention doctrine applies.[1]  (*See generally* Doc. No. 11.)  For the reasons discussed below, the

---

[1] Notably, in her motion to remand, Plaintiff does not contest that Defendants properly removed this case pursuant to federal question jurisidiction.  (*See generally* Doc. No. 11.)  Under 28 U.S.C. § 1441(a), defendants may remove any civil action brought in state court to the federal district court "embracing the place where [the] action is pending" if the district court has "original jurisdiction."  A district court has original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C.  § 1331.  Because Plaintiff alleges that Defendants violated her constitutional right to due process and brings this action under a federal statute, § 1983, the Court finds that we have original jurisdiction over this action and that the removal was undoubtedly proper.

Court disagrees.

### A. Legal Standard

"Abstention is an 'extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it' and one which should be invoked 'only in . . . exceptional circumstances.'" *Planned Parenthood of Central N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). "One type of abstention, commonly referred to as *Pullman* abstention, applies 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *Id.* (quoting *Colorado River*, 424 U.S. at 814); *see also Artway v. Att'y Gen. of State of N.J.*, 81 F.3d 1235, 1270 (3d Cir. 1996) ("*Pullman* abstention allows federal courts, in rare cases, to abstain from deciding a case if a state court's resolution of a state law issue would obviate the need for the federal court to reach a federal constitutional issue.").

*Pullman* abstention "is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." *Bellotti v. Baird*, 428 U.S. 132, 147 (1976). "The purpose of abstaining is twofold:  (1) to avoid a premature constitutional adjudication which could ultimately be displaced by a state court adjudication of state law; and (2) to avoid 'needless friction with state policies.'" *Planned Parenthood of Central N.J.*, 220 F.3d at 149 (quoting *Pullman*, 312 U.S. at 500); *see also Artway*, 81 F.3d at 1270 ("The doctrine attempts to avoid constitutional questions and promote principles of federalism."). The Third Circuit has repeatedly emphasized that "*Pullman* abstention should be rarely invoked." *Planned Parenthood of Central N.J.*, 220 F.3d at 149; *see*

*also Artway*, 81 F.3d at 1270 (stating that *Pullman* abstention is an "exception to the general rule that federal courts must hear cases properly brought within their jurisdiction").

For a federal court to abstain under *Pullman*, the court must find that three "special circumstances" are present:  (1) uncertain issues of state law underlie the federal constitutional claims; (2) the state law issues are amenable to a state court interpretation that would obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim; and (3) a federal court's erroneous construction of state would disrupt important state policies.  *Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 631 (3d Cir. 1991); *see also Planned Parenthood of Central N.J.*, 220 F.3d at 149–50; *Artway*, 81 F.3d at 1270; *Presbytery of N.J. of the Orthodox Presbyterian Church v. Whitman*, 99 F.3d 101, 106 (3d Cir. 1996).  If all three factors are present, the court must then determine whether abstention is appropriate by weighing the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants.  *Parenthood of Central N.J.*, 220 F.3d at 150; *Artway*, 81 F.3d at 1270.

If a court abstains under *Pullman*, it is "postponing its exercise of proper jurisdiction rather than concluding it lacks jurisdiction."  *Trump for President, Inc. v. Boockvar*, 481 F. Supp. 3d 476, 487 (W.D. Pa. 2020); *see also Harrison v. Nat'l Ass'n for the Advancement of Colored People*, 360 U.S. 167, 177 (1959) (explaining that the *Pullman* doctrine "does not . . . involve the abdication of federal jurisdiction, but only the postponement of its exercise; it serves the policy of comity inherent in the doctrine of abstention; and it spares the federal courts of [sic] unnecessary constitutional adjudications").

### B.  Analysis

The Court finds that "special circumstances" necessary for us to abstain under *Pullman*

are not present here.  We address each factor in turn below.

### 1. __Uncertainty of State Law__

First, the Court must consider whether there is an uncertain issue of state law present. Plaintiff argues that the question of whether Philadelphia Code § 12-2406(2)[2] is preempted by the Pennsylvania Motor Vehicle Code, 75 Pa. Stat. and Cons. Stat. Ann. § 6101 is an unsettled question of state law that the state court should decide.  (Doc. No. 11-1 at 6–8.)  We disagree. Section 6101 states that "no local authority shall enact or enforce any ordinance on a matter covered by the provisions of this title unless expressly authorized."  75 Pa. Stat. and Cons. Stat. Ann. § 6101(a).  In arguing that § 6101(a) preempts § 12-2406(2), Plaintiff asks us to read § 6101(a) in a vacuum.  But individual provisions of a statute are not to be read in isolation; rather, the statute must be read in its entirety.  *Cf. Gundy v. United States*, 129 S. Ct. 2116, 2126 (2019) ("This Court has long refused to construe words in a vacuum, as Gundy attempts.  It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (cleaned up)); *Casiano v. Casiano*, 815 A.2d 638, 642 (Pa. Super. Ct. 2002) ("[I]ndividual provisions of a statute should not be read in the abstract, but must be construed with a view to its place in the entire legislature structure of the statute." (cleaned up)).  At bottom, Plaintiff's proposed construction of § 6101 fails to take into account *other* relevant provisions of the Pennsylvania Motor Vehicle Code.

Specifically, Section 6109(a) of the Code states that its provisions "shall not be deemed to prevent the . . . local authorities on streets or highways within their physical boundaries from

---

[2] As noted *supra* Section II.B., Philadelphia Code § 12-2406 relates to the impoundment of vehicles and provides, "The owner . . . may obtain immediate release of the vehicle by the payment in full of all delinquent parking tickets issued to any and all vehicles registered in the name of the owner of the vehicle that is to be recovered, booting and/or towing fee and accrued storage charges."

the reasonable exercise of their police powers," which includes "regulating or prohibiting stopping, standing or parking."  75 Pa. Stat. and Cons. Stat. Ann. § 6109(a).  In turn, Section 6109(f) provides, "Nothing contained in this section shall be deemed to prevent local authorities by ordinance or resolution of the local governing body from delegating their powers . . . to a parking authority."  *Id.* § 6109(f).  And the Code expressly permits city parking authorities to "*enforce and administer* the system of on-street parking regulation," which "shall include *all ordinances enacted or adopted by the city* . . . pursuant to the [reasonable police] powers [given to local authorities under § 6109(a)]."  *Id.* § 6109(g)(1) (emphases added).  Based on the definition of "administer," city parking authorities may "provide any services or materials necessary to enforce any ordinance or resolution enacted in order to regulate or prohibit the stopping, standing or parking of motor vehicles."  *Id.* at § 6109(g)(5).  As for enforcement, city parking authorities may issue parking violation notices or citations; immobilize, tow, and impound vehicles; and collect fines, penalties, costs, and fees "for violations of any ordinance or resolution enacted in order to regulate or prohibit the stopping, standing or parking of motor vehicles."  *Id.*

Taken together, the Court cannot conclude that the Pennsylvania Motor Vehicle Code preempts Philadelphia Code § 12-2406(2).  The Pennsylvania Motor Vehicle Code expressly permits the City to enact ordinances to regulate on-street parking, permits the City to delegate its powers to the PPA, and permits the PPA to immobilize, tow, and impound vehicles as well as collect fines, penalties, et cetera when parking ordinances are violated.  Philadelphia Code § 12-2406(2), which relates to the impoundment of vehicles and the PPA's ability to collect fees and fines related to towing and delinquent parking tickets, falls within the ambit of the PPA's delegated authority.

Critically, Plaintiff fails to address these other portions of the Pennsylvania Motor Vehicle Code in a reply brief, nor does she explain exactly how § 6101(a) preempts Philadelphia Code § 12-2406(2).[3]  *See Providence Pediatric Med. Daycare, Inc. v. Alaigh*, 799 F. Supp. 2d 364, 371 (D.N.J. 2011) ("New Jersey regulations relating to Medicaid are central to the parties' dispute, but Defendants do not explain in what way or manner those regulations are 'uncertain,' or, for that matter, amendable [sic] to an interpretation that would vitiate the allegations of federal law violations iterated by Plaintiffs.").  Because Plaintiff has not shown that there is any particular legal uncertainty underlying her federal constitutional claims, the first factor is not satisfied.[4]

## 2.  Effect of State Law on the Federal Constitutional Claim

Second, even if there were an unsettled question of state law, Plaintiff has not shown that the state court's interpretation of that issue would vitiate the need for adjudication of, or substantially narrow the scope of, her § 1983 claim.  *Pullman* involved a claim that an order of the Texas Railroad Commission violated Texas law and the Equal Protection, Due Process, and

---

[3] Plaintiff argues, "There is no express provision in the Vehicles Code that makes a parking ticket issued against one vehicle a lien against another vehicle or that allows the proceeds of the sale of a vehicle to be applied to tickets issued against another vehicle.  The ability to do this appears to be something the Philadelphia City Council made up on its own."  (Doc. No. 11-1 at 8.)  Thus, Plaintiff appears to be arguing that the City was not expressly authorized to enact Philadelphia Code § 12-2406(2).  But Plaintiff fails to connect the dots.  Plaintiff does not point to any provisions in the Pennsylvania Motor Vehicle Code that "cover" the same "matter" as Philadelphia Code § 12-2406(2) and Plaintiff fails to address the other provisions of the Pennsylvania Motor Vehicle Code that Defendants argue constituted "express authorization" (*see* Doc. No. 14 at 6–7).

[4] To support her argument that *Pullman* abstention is appropriate given the purportedly uncertain state law, Plaintiff cites to *Ayers v. Philadelphia Housing Authority*, 716 F. Supp. 855 (E.D. Pa. 1989).  Although the district court abstained under *Pullman* in that case, *see id.* at 859, the Third Circuit disagreed and vacated that order, *see Ayers v. Phila. Housing Auth.*, 908 F.2d 1184, 1194 & 1195 n.21 (3d Cir. 1990) (finding that the district court abused its discretion by abstaining and vacating the district court's order as to abstention under *Pullman*).  Thus, the very case that Plaintiff cites and analogizes to is not good law on the *Pullman* doctrine.

Commerce Clauses of the U.S. Constitution.  *See* 312 U.S. at 498–99.  The Supreme Court

concluded that abstention was appropriate because "constitutional adjudication plainly could be

avoided if a definitive ruling on the state issue would terminate the controversy."  *Id.* at 499; *see*

*also id.* at 500 ("In this situation a federal court of equity is asked to decide an issue by making a

tentative answer which may be displaced tomorrow by a state adjudication.  The reign of law is

hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling

decision of a state court.").

        Unlike *Pullman*, whether the Philadelphia Code § 12-2406(2) is preempted by

Pennsylvania Motor Vehicle Code § 6101(a) will not eliminate the need for adjudication of

Plaintiff's § 1983 claim.  Plaintiff's own briefing illustrates that her § 1983 claim alleging

Defendants denied her due process is premised on more than just the alleged invalidity of

Philadelphia Code § 12-2406(2).  (*See* Doc. No. 11-1 at 4 ("If demanding payment of tickets

issued to non-impounded vehicles represents a valid exercise of the City of Philadelphia's home

rule authority, then *one of the bases* for Ms. Ferebee's due process claims is eliminated."

(emphasis added)); *id.* at 4 n.2 ("This is one of two bases for Ms. Ferebee's due process claim for

misrepresenting the amount of her debt.  The other basis is that the PPA petitioned the court of

common pleas for authority to auction Ms. Ferebee's vehicle under Court of Common Pleas

Administrative Regulation 96-1.  Under that regulation, the PPA is only allowed to collect the

tickets issued against the impounded vehicle and no other vehicle."); *id.* at 6 ("*One of the*

*theories* for why the notice was inaccurate is Ms. Ferebee's contention that Philadelphia Code

Section 12-2406(2) is invalid under the Pennsylvania Vehicle's Code." (emphasis added).)

        Plaintiff's Complaint also shows that her federal constitutional claim would not be

eliminated or even substantially narrowed in scope if we were to abstain.  To the contrary,

Plaintiff alleges in her Complaint several reasons as to why she was denied due process of law (*see* Compl. at ¶¶ 61–63).  For example, she alleges she was denied due process because the "standard for impoundment notice issued to [Plaintiff] was not reasonably calculated . . . to apprise her of the action against her and the information she needed to protect her rights" (*id.* at ¶ 61; *see also id.* at ¶¶ 61(a)–(c) (alleging that the notice failed to clearly inform Plaintiff:  (a) that she had until the date of the auction, March 12, 2020, to retrieve her car; (b) of the amount she had to pay to retrieve her car; and (c) that she could dispute the validity of the impoundment by filing a written request for a hearing with the Bureau of Administrative Adjudication)) and because Defendants "fail[ed] to provide her a hearing when she disputed her liability on the $3,700 of tickets they asked her to pay to get back her Vehicle" (*id.* at ¶ 63).  Further, to the extent Plaintiff claims that the fact that she was told to pay an erroneous amount to retrieve her car denied her due process to law (*see id.* at ¶ 62), that allegation is not just based on Philadelphia Code § 12-2406(2); she also cites to the fact that, under General Court Regulation 96-1, 26 Pa. B. 2489, she should have been allowed to recover her car for $1,063.27, the amount listed in the PPA's petition to the state court regarding the public auction.  (*See id.* at ¶ 62(a).)

For these reasons, the Court finds that whether § 6101 of the Pennsylvania Motor Vehicle Code preempts Philadelphia Code § 12-2406(2) would not obviate the need to adjudicate her § 1983 claim or substantially limit the scope of that claim and, accordingly, the second factor is not satisfied.  *See Children First Found. v. Legreide*, No. Civ.A. 04-2137(MLC), 2005 WL 3088334, at *5 (D.N.J. Nov. 17, 2005) ("A New Jersey state court determination interpreting the term 'logotype' in N.J.S.A. § 39:3–27.36(d) and N.J.A.C. § 13:20–39.8 would effectively narrow the plaintiffs' First Amendment claim concerning the chief administrator denying their first license plate design.  However, it would not address the plaintiffs' other constitutional claims . . .

. The chief administrator denied the plaintiffs' second design because she claimed that the design included an impermissible advocacy message.  The chief administrator did not deny the design because of the term 'logotype.'  Therefore, a state court's interpretation of the term 'logotype' will not affect the plaintiffs' claim that the defendants violated their First Amendment rights with respect to the denial of the second plate design.").  *Contra Chez*, 945 F.2d at 632–33 ("Appellants' constitutional claim is that the Zoning Ordinance, as construed by the Board, totally prohibits video viewing booths in all parts of Union Township in violation of appellants' First Amendment right to freedom of expression.  However, the state court might conclude that the private video viewing booths constitute a motion picture theater use under the Zoning Ordinance.  If so, Chez Sez could operate its video viewing booths in any district of Union Township where theaters are permitted, and the basis for its constitutional claim would be eliminated.").

### 3.   Interference with Important State Policies

Finally, Plaintiff failed to address whether the third "special circumstance" is present— whether a federal court's erroneous construction of state law would disrupt important state policies.  (See generally Doc. No. 11-1.)  In any event, because all three "special circumstances" must be present for the Court to abstain under *Pullman* and because we have found that the first and second circumstances are not present, we need not consider whether the third factor has been met.

* * *

Because "special circumstances" are not present here, the Court holds that abstention under the *Pullman* doctrine is not appropriate.

14

### III.    Conclusion

For the foregoing reasons, the Court denies Plaintiff's motion.

An appropriate Order follows.