## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOLLY E. FEREBEE, for herself and others similarly situated,**<br>**Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **NYCOLE MACKLIN,**<br>**SCOTT A. PETRI, II,**<br>**DENNIS G. WELDON, JR.,**<br>**PHILADELPHIA PARKING**<br>**AUTHORITY,**<br>**MICHAEL GIUNTA,**<br>**CITY OF PHILADELPHIA,**<br>**JOHN DOE NO. 1,**<br>**JOHN DOE NO. 2, and**<br>**OMIKA BARNES,**<br>                    **Defendants.** | **NO. 22-1155** |

### <u>MEMORANDUM</u>

**HODGE, J.**                                                          **June 27, 2023**

## I.       INTRODUCTION

Following the impoundment and sale of her car, Plaintiff Dolly E. Ferebee, on behalf of herself and others similarly situated, sued the Philadelphia Parking Authority ("PPA"), Nycole Macklin, Scott A. Petri, and Dennis G. Weldon, Jr. (together with the PPA, the "PPA Defendants") and the City of Philadelphia (the "City"), Omika Barnes, and Michael Giunta (together with the City, the "City Defendants") (collectively, "Defendants"). (ECF No. 28.) In her Second Amended Complaint ("SAC"), Plaintiff asserts two counts: first, she brings a 42 U.S.C. § 1983 claim against all Defendants, alleging that they violated her procedural due process rights under the Fourteenth Amendment of the U.S. Constitution (Count I), and second, she seeks a declaratory judgment against the PPA and the City and asks the Court to find that Philadelphia Code Section 12-2406(2)

is not a valid exercise of the City's home rule authority and is unenforceable (Count II). (*Id.* at 17, 25.) Specifically, Plaintiff alleges that Defendants demanded she pay $3,705 in past due parking tickets before releasing her vehicle, when the PPA only had the authority to collect $1,063.27, and had she known she only owed $1,063.27, she would have reclaimed her vehicle. (*See generally id.*)

Presently before the Court are the City Defendants' and the PPA's Motions to Dismiss. (ECF Nos. 30–31.) Plaintiff opposes the motions. (ECF No. 32.) For the reasons that follow, the Court grants in part and denies in part the motions to dismiss.

## II.    BACKGROUND

### A.    Factual Background[1]

As the Court writes only for the parties, the Court relies on the facts outlined at length in the Court's prior Memorandum regarding the First Amended Complaint (ECF No. 26.) and only recites the facts that are necessary to resolve the current motions before the Court.

#### 1.    Plaintiff Receives Notice That Her Vehicle Was Impounded

Plaintiff, Dolly E. Ferebee, was the owner of a 2010 Dodge Grand Caravan, bearing Pennsylvania license plate number KGP6113, valued at about $7,500. (ECF No. 28 at 3 ¶ 14.) As of February 2020, "five parking tickets had been issued against [Plaintiff's] Vehicle for unpaid parking violations totaling $507.00." (*Id.* at 3 ¶ 15.) As a result, Plaintiff's vehicle was impounded by the PPA on February 11, 2020. (*Id.* at 3 ¶ 16.)

Plaintiff received a letter from the PPA, dated February 12, 2020, indicating that her vehicle was impounded due to her delinquent parking tickets. (*Id.* at 3 ¶ 17; ECF No. 28-3.) The PPA's letter further instructed Plaintiff that she may recover her vehicle, in accordance with Philadelphia

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Traffic Code Section 12-2406, by reporting to the PPA's location at 913 Filbert Street, Philadelphia, Pennsylvania and "pay[ing] all outstanding parking tickets issued to this vehicle," a towing fee, and a daily storage fee. (ECF No. 28 at 3 ¶¶ 18, 20; ECF No. 28-3.)

The PPA's letter further notified Plaintiff that, in accordance with Chapter 2800 of the Philadelphia Code, she was entitled to an administrative hearing before the Bureau of Administrative Adjudication ("BAA")—which is part of the government of the City of Philadelphia—by appearing at 913 Filbert Street. (ECF No. 28-3.) The letter listed the BAA's hours of operation for conducting administrative hearings. (*Id.*)

The letter further advised Plaintiff that, pursuant to Philadelphia Traffic Code Section 12-2406 and President Judge General Court Regulation ("GCR") No. 96-1, if Plaintiff did not recover her vehicle within fifteen days of the date of the letter, the PPA would petition the court to sell the vehicle at a public auction on March 12, 2020. (ECF No. 28 at 4 ¶ 22; ECF No. 28-3.)

## 2. Plaintiff Attempts to Retrieve Impounded Vehicle

In the days immediately following the impoundment, Plaintiff made several trips to the 913 Filbert Street office.[2] (ECF No. 28 at 4 ¶ 25.) Ms. Ferebee knew there were five tickets issued against her vehicle for $507, and she went to the BAA with the funds to pay for those tickets together with fees and costs. (*Id.* at 4 ¶ 27.) But, to her surprise, the personnel at the 913 Filbert Street office demanded she pay $3,705 to retrieve the vehicle. (*Id.* at 4 ¶ 28.)

An employee at 913 Filbert Street looked up all tickets associated with Plaintiff's name and printed the electronic records of the same. (*Id.* at 4–5 ¶ 29; ECF No. 28-2.) These electronic

---

[2] The Court accepts Plaintiff's assertions referring to the office at 913 Filbert Street by its address because it was unclear to Plaintiff whether the people she interacted with at that address were employed by the Philadelphia Parking Authority or the Bureau of Administrative Adjudication. (ECF No. 28 at 4 ¶ 26.)

records, which were, in part, generated from Philadelphia Municipal Court, Traffic Division's website, outlined details for multiple car owners bearing the name "Dolly Ferebee," including license plate numbers, addresses, and parking violation details, such as dates, locations, and amounts owed per parking violation. (ECF No. 28 at 4–5 ¶ 29; ECF No. 28-2.) The employee reviewed the printout of records from the Philadelphia Municipal Court's website and handwrote on the front of these electronic records that Plaintiff owed $3,705 in outstanding tickets to retrieve her vehicle. (ECF No. 28 at 4–5 ¶¶ 28–29.) Plaintiff contends that a number of these tickets were issued to her deceased mother, who shared the same name as Plaintiff. (*Id.* at 4–5 ¶¶ 29–30.) "Some of the tickets issued to [Plaintiff's] mother dated back to the 1970s when [Plaintiff] was a child and all of the tickets were issued for vehicles other than the impounded vehicle [she] was seeking to recover." (*Id.* at 5 ¶ 30.) None of the tickets issued to Plaintiff's mother were ever served on Plaintiff. (*Id.* at 6 ¶ 41.)

Plaintiff protested being held liable for tickets issued to her mother and returned to the 913 Filbert Street office several times with evidence of her mother's identity. (*Id.* at 5 ¶¶ 31–32.) Ms. Ferebee had several meetings with personnel at 913 Filbert Street but was not certain whether she had a hearing. (*Id.* at 5 ¶ 33.) Nonetheless, Plaintiff was repeatedly told that she had to pay the full $3,705 to retrieve her vehicle. (*Id.* at 6 ¶ 39.)

### 3. February 13, 2020 Hearing

While at 913 Filbert Street on February 13, 2020, Plaintiff appeared before a BAA hearing examiner, Defendant Omika Barnes, for a twenty-minute administrative hearing, but for about half of the time, during which time Defendant Barnes left the hearing room to consult with others or was looking at her computer screen, nothing is heard on the recording. (*Id.* at 5 ¶¶ 34–35.) During the hearing, Plaintiff acknowledged her liability for tickets issued to her vehicle but protested being

held liable for tickets issued to her deceased mother for vehicles other than the one that had been impounded. (*Id.* at 5 ¶ 31.) Defendant Barnes did not give credence to Plaintiff's denials that tickets issued to vehicles other than the impounded vehicle were not hers, and Plaintiff was told that she had to pay the full $3,705 for tickets issued to her and her mother. (*See id.* at 6 ¶¶ 36, 39.) If Defendant Barnes made an official ruling or finding at the conclusion of the hearing, Plaintiff was not informed nor provided any written correspondence following the hearing, and the BAA has not produced Defendant Barnes' ruling or finding. (*Id.* at 13 ¶¶ 79–81.)

Defendant Barnes told Plaintiff to go to another administrative body for additional records but did not inform her that she had 30 days to appeal her or the BAA's ruling to the Court of Common Pleas. (*Id.* at 11–12 ¶¶ 75–76.) In other words, Plaintiff did not know that she had until March 16, 2020 to appeal. (*Id.*; *see also id.* at 14 ¶ 84.)

### 4.    Petition to Auction Plaintiff's Vehicle

On February 24, 2020, the PPA filed a petition to the Philadelphia Court of Common Pleas to authorize the sale of Plaintiff's vehicle at auction on March 12, 2020 (four days before Plaintiff's appeal period was set to expire on March 16, 2020). (*Id.* at 4, 7 ¶¶ 22, 43; ECF No. 28-5 at 3.) Attached to the petition was a list of about 110 vehicles the PPA proposed to auction (including Plaintiff's vehicle), which indicated the amount of money owed to the PPA (i.e., the fines, fees, and costs) for each vehicle. (ECF No. 28 at 7 ¶¶ 44–46.) Despite the fact that Plaintiff was told she had to pay $3,705 to retrieve her car, the PPA only sought authorization to collect $1,063.27. (*Id.* at 7 ¶ 46.) In accordance with GCR 96-1, this sum represented only the tickets due on the impounded vehicle. (*Id.* at 8–9 ¶¶ 53–57.) The PPA's petition was never served on Plaintiff. (*Id.* at 9 ¶ 63 ("At no time was the petition . . . served on [Plaintiff] or any car owners.").)

5

On the same day, February 24, 2020, the court signed an order granting the PPA's petition to sell Plaintiff's car at a public auction, and Plaintiff was served a copy of this order. (*Id.* at 9 ¶¶ 58–59; ECF No. 28-5 at 35; ECF No. 28-7.) Under that order, Plaintiff only had to pay $1,063.27 to recover her vehicle and could make the payment any time up to the date of the sale, but no one informed Plaintiff. (ECF No. 28 at 9 ¶ 60.)

### 5. Plaintiff's Vehicle Is Auctioned

On March 12, 2020—four days before Plaintiff's appeal period was set to expire—Plaintiff's vehicle was auctioned and purchased by a third party for $2,800. (*Id.* at 14 ¶¶ 84, 88.) On June 16, 2020, the Philadelphia County Court of Common Pleas entered another order confirming the sale of Plaintiff's vehicle from the auction and authorized the transfer of its title. (*Id.* at 14 ¶ 87; ECF No. 28-8.)

### 6. The Applicable Codes

The Pennsylvania Motor Vehicle Code preserves the City of Philadelphia's authority to regulate parking in its jurisdiction. Section 6109(a) of the Code states that its provisions "shall not be deemed to prevent the . . . local authorities on streets or highways within their physical boundaries from the reasonable exercise of their police powers," which includes "regulating or prohibiting stopping, standing or parking." 75 Pa. Stat. & Con. Stat. § 6109(a). However, the Pennsylvania Motor Vehicle Code also states that "[t]he provisions of this title shall be applicable and uniform throughout this Commonwealth and in all political subdivisions in this Commonwealth, and no local authority shall enact or enforce any ordinance on a matter covered by the provisions of this title unless expressly authorized." 75 Pa. Stat. & Con. Stat. § 6101(a).

The Philadelphia Code delegates this authority to the PPA and outlines the local ordinances that govern parking in the City. Philadelphia Code Section 12-2406 governs the recovery of

impounded vehicles. Section 12-2406(2), which was amended in 2013, provides, "The owner . . . may obtain immediate release of the vehicle by the payment in full of all delinquent parking tickets issued to any and all vehicles registered in the name of the owner of the vehicle that is to be recovered, booting and/or towing fee and accrued storage charges." Alternatively, the owner may contest the amount of the delinquencies and request an expedited hearing before the BAA, which must be held within one day. *See id.* § 12-2406(1) (explaining that a vehicle that has been impounded may be recovered if the owner "demand[s] an expedited hearing before a Parking Hearing Examiner" and that the hearing "shall be held not later than the first day, excluding Sunday, following the demand"). If a vehicle is not reclaimed within fifteen (15) days, the vehicle may be sold at public auction to satisfy any outstanding fines, penalties, charges, or outstanding tickets. *Id.* § 12-2406(10). However, before the PPA may auction off a vehicle, it must receive an order from the Philadelphia Court of Common Pleas permitting it to do so. *See id.* § 12-2406(10)(b).

To sell an impounded vehicle at auction, the PPA must obtain a court order authorizing the sale. 75 Pa. Stat. & Con. Stat. § 6310(d). In the petition, the PPA requests authority to auction impounded vehicles under GCR 96-1, 26 Pa.B. 2489. (*See* ECF No. 28-5 at 7 ¶ 8; ECF No. 28-6 at 6 ¶ 8.) Under GCR 96-1, car owners are allowed to retrieve impounded vehicles by paying all of the tickets issued to the impounded vehicle, GCR 96-1(4), and may do so up to the date of the sale. (*Id.*) Accompanying the petition is an exhibit in which the PPA identifies each car it is seeking to auction along with the amounts of the fines, fees, and costs the PPA wants authorization to collect. These sums are based on the tickets issued against the impounded vehicles. (ECF No. 28 at 9 ¶ 57.) The petition is filed with the Court of Common Pleas *ex parte* and signed by the court without a hearing. (*Id.* at 9 ¶ 58.)

B.      **Procedural History**

On February 10, 2022, Plaintiff initiated this action in state court. (*See generally* ECF No. 1.) On March 25, 2022, the PPA Defendants, with the City Defendants' consent, removed the case to federal court. (*Id.*) Plaintiff moved to remand, (ECF. No. 11.), and the Court denied the motion. (ECF Nos. 18–19.) On May 31, 2022, Plaintiff filed an Amended Complaint. (ECF No. 15.) The PPA Defendants and the City Defendants moved to dismiss the Amended Complaint (ECF Nos. 22–23.) The Court granted in part and denied in part Defendants' motions to dismiss. (ECF No. 26.) The Court denied both Defendants' motions to dismiss the declaratory judgment claim. (*Id.* at 25.) The Court granted Defendants' motions as to the claims against the Individual Defendants (Nycole Macklin, Scott A. Petri, Dennis G. Weldon, Jr., Omika Barnes, and Michael Giunta), the Section 1983 Fourth Amendment claim against all Defendants, and the Section 1983 due process claim against the City only.[3] (*Id.*)

Following the Court's decision, Plaintiff filed a Second Amended Complaint. (ECF No. 28.) In the SAC, Plaintiff brings a Section 1983 claim against all Defendants, alleging that they violated her procedural due process rights under the Fourteenth Amendment, and she also seeks a declaratory judgment that Philadelphia Code Section 12-2406(2) is not a valid exercise of the City's home rule authority. (*Id.* at 17, 25.)

---

[3] The Court denied Defendants' motions to dismiss Plaintiff's procedural due process claim "to the extent it hinge[d] on Defendants' failure to provide a meaningful hearing." (ECF No. 26 at 21). However, for the City, the Court granted its motion to dismiss the Section 1983 claim due to Plaintiff's failure to plead municipal liability. (*Id.* at 23.) The Court dismissed the Section 1983 claim against the City without prejudice and with leave to amend, ruling that Plaintiff "must connect the dots between the City's failure to provide a meaningful hearing and a policy, practice, or custom of the City[]" in order to sufficiently plead municipal liability. (*Id.* at 23 n.9.) For PPA, the Court did not dismiss the Section 1983 claim because "PPA failed to administratively raise *Monell.*" (*Id.*)

The City Defendants move to dismiss the SAC, arguing, among other things, that Plaintiff fails to state a due process claim because she was afforded the appropriate notice and opportunity to be heard before the BAA, Plaintiff fails to state a *Monell* claim because she failed to plead a custom or policy, Plaintiff failed to exhaust her administrative remedies, and Philadelphia Code Section 12-2406(2) is a valid exercise of the City's municipal powers. (ECF No. 30.) The PPA moves to dismiss the SAC, arguing, among other things, that Plaintiff fails to state a due process claim against PPA because "[it] has no role whatsoever with respect to providing hearings to persons who dispute parking tickets, impoundments or dispute the conditions under an impounded vehicle will be released" and Philadelphia Code Section 12-2046 is a reasonable exercise of the City's authority pursuant to the Pennsylvania Motor Vehicle Code. (ECF No. 31-1 at 10, 12.) Plaintiff opposes the motions. (ECF No. 32.)

## III.   LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one

9

for summary judgment." *Id.* (internal quotation marks and alterations omitted). Similarly, the Court "may consider an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV.    DISCUSSION

The City Defendants move to dismiss the claims brought against the Individual Defendants—Michael Giunta and Omika Barnes—arguing that the Court's prior Order and Opinion dismissed those claims with prejudice and should be honored. (ECF No. 30 at 12–13.) Further, the City Defendants move to dismiss the procedural due process claim, arguing that Plaintiff was afforded appropriate notice and opportunity to be heard before the BAA. (*Id.* at 14– 18.) The City also contends that the *Monell* claim must be dismissed because Plaintiff has not pled that the City has a custom, policy, or practice related to the deprivation of property nor that the City caused Plaintiff's injuries. (*Id.* at 18–26.) Additionally, the City moves to dismiss Plaintiff's procedural due process claims for failure to exhaust her administrative remedies. (*Id.* at 26–28.)

PPA moves to dismiss Plaintiff's procedural due process claim, arguing that PPA has no role in the hearing process, and as such PPA is not liable. (ECF No. 31 at 8–10.) Lastly, the City Defendants and PPA argue that the declaratory judgment claim should be dismissed because Philadelphia Code Section 12-2406(2) is a valid exercise of the City's Home Rule Authority pursuant to the Pennsylvania Motor Vehicles Code. (ECF No. 30 at 28–30; ECF No. 31 at 11–12.) The Court addresses Defendants' contentions below.

### A.    Claims Against Individual Defendants

The Court previously dismissed all individual defendants. (*See* ECF No. 26 at 25 ("For the foregoing reasons, the Court dismisses the claims against the Individual Defendants and the § 1983

Fourth Amendment claim, with prejudice.").) As such, the claims against the Individual Defendants remain dismissed with prejudice.

### B.      Procedural Due Process Claim

Plaintiff's SAC alleges that Defendants violated her due process rights under the Fourteenth Amendment, which provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV. Under the Fourteenth Amendment, "a state may not authorize the deprivation of a protected liberty or property interest without providing a procedure in connection with that deprivation that meets the requirements of due process." *Sample v. Diecks*, 885 F.2d 1099, 1114 (3d Cir.1989) (citations omitted). "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *King v. City of Phila.*, 654 F. App'x 107, 111 (3d Cir. 2016) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006)). Defendants do not dispute that Plaintiff had a protected property interest, instead arguing that the procedures available to Plaintiff did provide due process of law. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation marks and citation omitted); *see also Kadakia v. Rutgers*, 633 F. App'x 83, 88 (3d Cir. 2015) ("The essence of a procedural due process claim, of course, is notice and an opportunity to be heard.").

### 1.      Claim Against the City

Plaintiff alleges that the February 13, 2020 hearing was "meaningless" because she needed a hearing in which she could receive a determination of the amount she owed to recover her

vehicle, but instead Plaintiff received a hearing on probable cause for the impoundment of her vehicle, in which Defendant Barnes did not know the official amount of money the PPA sought to collect, and as such, Defendant Barnes told Plaintiff the incorrect amount (which she could not afford). "[R]esolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Mathews*, 424 U.S. at 334 (citing *Arnett v. Kennedy*, 416 U.S. 134, 167–68 (1974) (Powell, J., concurring in part)). To conduct this analysis, the Court applies the three-factor balancing test announced in *Mathews v. Eldridge*: (1) "'the private interest that will be affected by the official action;'" (2) "'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail;'" and (3) "'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.'" *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009) (quoting *Mathews*, 424 U.S. at 335).

Although the *Mathews* factors are the applicable factors for determining whether the post-deprivation procedures available satisfy due process, the parties do not specifically address those factors. After analyzing the *Mathews* balancing test, the Court maintains its decision from its previous Order and Opinion, holding that Plaintiff has pled sufficient facts alleging that the City deprived Plaintiff of a meaningful hearing and, therefore, her procedural due process claim survives the motion to dismiss stage. (*See* ECF No. 26 at 19–21.)

In *Bell v. Burson*, the United States Supreme Court assessed Georgia's Motor Vehicle Safety Responsibility Act, Ga. Code Ann. §§ 92A-601–92A-605 (1958), which "provide[d] that the motor vehicle registration and driver's license of an uninsured motorist involved in an accident

shall be suspended unless he posts security to cover the amount of damages claimed by aggrieved parties in reports of the accident." 402 U.S. 535, 535–36 (1971). Under that law, there was an opportunity for a pre-suspension administrative hearing, but that hearing "exclude[d] consideration of the motorist's fault or liability for the accident." *Id.* at 536. The Supreme Court determined that because liability for the accident was "an important factor in the State's determination to deprive an individual of his license[], the State may not, consistent[] with due process, eliminate consideration of that factor in its prior hearing." *Id.* at 541. The Court finds *Bell* instructive for this matter.

The first *Mathews* factor is assessing "'the private interest that will be affected by the official action[.]'" *Biliski*, 574 F.3d at 220 (quoting *Mathews*, 424 U.S. at 335). It is clear that Plaintiff has a substantial interest in the use and ownership of her vehicle. This matter involves a post-deprivation hearing taking place after Plaintiff's vehicle has already been impounded. As such, Plaintiff has a substantial interest in having a meaningful post-deprivation hearing in which she could receive a determination of the amount she owed to recover her vehicle from impoundment.

The second *Mathews* factor is weighing "'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail[.]'" *Biliski*, 574 F.3d at 220 (quoting *Mathews*, 424 U.S. at 335). Here, the City has a strong public interest in ensuring compliance with its traffic and parking laws. Philadelphia Code Section 12-2406 was amended in 2013 to "clarif[y] the current requirement that a vehicle owner must pay all delinquent parking tickets and fees on *any* vehicle currently or previously registered to the owner in order to secure the release of a vehicle once it has been booted

or impounded."[4] *Bill 130565 before the Council of the City of Phila. Comm. on Streets and Services*, Committee Hearing Transcript, at 8 ¶¶ 2–8 (Sept. 27, 2013) (emphasis added). The rationale for the amendment was to ensure "an effective way to collect unpaid money due [to] the City [and] encourage[] compliance with the law" because violators could change their license place or get a new vehicle with a new plate to avoid paying fines and fees due on the old license plate. *Id.* at 8 ¶¶ 9–24. However, the City's interests are not incompatible with the additional or substitute procedural safeguards requested by Plaintiff nor should additional safeguards prove burdensome. In her SAC, Plaintiff makes three requests for additional or substitute procedural safeguards: (1) coordination between the PPA and BAA regarding the amount of indebtedness, (2) a hearing to resolve liability for the underlying tickets and the exact amount of indebtedness needed to retrieve the impounded vehicle, and (3) coordination between the PPA and BAA regarding the auction date of vehicles with the expiration date of the appeal period. (ECF No. 28 at 10, 22–23 ¶¶ 68, 105(d), 106.) Like in *Memphis Light, Gas & Water Div. v. Craft*, "the opportunity for a meeting with a *responsible* employee *empowered* to resolve the dispute could be afforded well in advance of the scheduled date of [auction]" and Defendants "would retain the option to [sell impounded vehicles] after affording [an] opportunity and concluding that the amount [of indebtedness] was justly due." 436 U.S. 1, 18–19 (1978) (emphasis added). Further, the Court incorporates its reasoning from its previous Order and Opinion.[5]

---

[4] Prior to the Amendment, the text of Section 12-2406(2) stated: "The owner or any person on behalf of the owner may obtain immediate release of the vehicle by the payment in full of outstanding parking tickets, booting and/or towing fee and accrued storage charges. Such payment shall constitute a waiver of the right to contest the parking tickets, the tow and/or booting fee and any storage charges." Phila. Code § 12-2406(2) (2011).

[5] ECF No. 26 at 20: "Ms. Barnes was not a 'responsible employee' within the meaning of *Memphis Light*, as the recordings and allegations in the Amended Complaint make clear that she was incapable of helping Plaintiff rectify the error surrounding the outstanding parking tickets or resolve the dispute. Rather, she refused to allow Plaintiff to recover her vehicle in exchange for

The third *Mathews* factor is measuring "'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.'" *Biliski*, 574 F.3d at 220 (quoting *Mathews*, 424 U.S. at 335). The existing meaningful *probable cause* hearing fails to address Plaintiff's allegations, and the absence of a post-deprivation hearing to address the *merits* of Plaintiff's claims rendered the risk of erroneous deprivation great. Like in *Bell*, although Plaintiff had an opportunity to present her objections regarding probable cause at the February hearing before Defendant Barnes, the questions of whether Plaintiff was liable for the underlying tickets and the exact amount of her indebtedness were central factors to the continued, and eventually permanent, deprivation of her vehicle. Plaintiff's requested additional or substitute procedural safeguards would mitigate the risk of erroneous deprivation.

Accordingly, the record before the Court shows that the *Mathews* balancing test weighs in favor of Plaintiff. The Court concludes that the SAC plausibly alleges that due process required the City to provide Plaintiff with a post-deprivation hearing on the merits of Plaintiff's liability on the underlying tickets and determination of the exact amount of her indebtedness. Whether the post-deprivation hearing was indeed "meaningless" is a question of fact not appropriate for

the amount the PPA demanded in its notice (the outstanding parking tickets issued to that vehicle, along with fines and costs), and merely directed Plaintiff to the DMV. At base, the Court finds that whether BAA hearing officers are empowered with the authority to actually act related to the impoundment (instead of doing what Ms. Barnes did, which was limited to explaining the process, in turn passing off the complainant to another governmental entity, and informing the complainant she was on her own to fix the problem) is a fact issue for discovery. Further, Ms. Barnes was unable to resolve the dispute because she did not know the amount the PPA was actually seeking to collect from Plaintiff. Instead, she told Plaintiff that she had to pay the full amount owed on all tickets allegedly associated with her name, not just those issued against the vehicle that had been impounded. The PPA and City 'should not be entitled to profit by [their] own misrepresentations.' *United States v. Henderson*, 707 F.2d 853, 856 (5th Cir. 1983). The Court recognizes that the Fifth Circuit's *Henderson* opinion focused on the government's failure to provide adequate notice, as opposed to a meaningful hearing; nonetheless, we find the Fifth Circuit's rationale persuasive."

resolution at this early stage of the litigation. *See, e.g.*, *Bliss v. Sanguinet*, No. CIV.A. 12-10123-RWZ, 2013 WL 3334728, at *4 (D. Mass. June 24, 2013) (citing *Lopez-Anaya v. Palacios-de-Miranda*, No. 06-2085CCC, 2007 WL 2254501, at *2 (D.P.R. Aug. 6, 2007)) ("Whether the hearing was indeed a 'sham' is a question of fact not appropriate for resolution at this early stage of the litigation."). Therefore, Plaintiff has sufficiently pled a procedural due process claim against the City, and the Court denies the City's motion to dismiss Count I.

### 2.    Claim Against PPA

The remaining question is whether PPA is also liable for the alleged violation of Plaintiff's procedural due process rights. Under Count I, Plaintiff alleges that the "PPA *or* the BAA violated Ms. Ferebee's right to due process under [the] 14th Amendment by failing to provide her with a meaningful hearing." (ECF No. 28 at 22 ¶ 105 (emphasis added).) Defendant PPA argues that Plaintiff's due process claim against it fails as a matter of law because "PPA does not and cannot handle the adjudication of parking violations or impoundment disputes." (ECF No. 31-1 at 8.)

When assessing whether the owner of a towing service was liable to a plaintiff for failure to afford a hearing prior to the imposition of a lien for towing and storage costs, the court in *Mays v. Scranton City Police Dep't* reasoned that "[a] causal link between the state action and the alleged constitutional violation must be established before liability attaches." 503 F. Supp. 1255, 1264 (M.D. Pa. 1980) (first citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692 (1978); then citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976)). In order to determine liability for the alleged constitutional deprivation, the "important question" courts must evaluate "is who caused the alleged violation." *Blessing Auto Repair, Inc. v. Pennsylvania State Police*, No. CV 20-6569, 2021 WL 3418877, at *3 (E.D. Pa. Aug. 5, 2021) (citing *Sheller v. City of Phila.*, No. 11-CV-2371, 2012 WL 4754820, at *6 (E.D. Pa. Oct. 5, 2012)).

16

Here, Plaintiff does not sufficiently plead a Fourteenth Amendment claim against the PPA. Plaintiff's allegations that "[she] was denied due process because the PPA sold her Vehicle prior to expiration of her period to appeal Ms. Barnes' ruling[]" and "[t]he PPA does not have a procedure to coordinate the auction date of vehicles with the expiration date of car owners' appeal period and does not coordinate these dates[]" are insufficient to maintain a procedural due process claim against PPA. (ECF No. 28 at 23 ¶ 106.) Similar to the facts in *Mays*, the constitutional violation sufficiently alleged here is the failure to provide a meaningful post-deprivation hearing prior to the sale of an impounded vehicle. The PPA is acting pursuant to its authority under Philadelphia Code Section 12-2504, and the auction of the impounded vehicle is not itself a denial of constitutional rights. Further, the Court agrees with PPA that "[P]laintiff's own allegations make clear that PPA properly performed its clerical duties, even beyond providing constitutionally sufficient notice[,]" and as such, the "who" in question that caused Plaintiff's alleged constitutional violation is the BAA, not PPA. (ECF No. 31-1 at 10.) Therefore, Plaintiff failed to state a procedural due process claim against PPA, and the Court dismisses Count I against PPA.

### C.    *Monell* Liability

A governmental entity "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers" or where a constitutional deprivation was caused by a "governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91 (1978).

In *Monell*, the Supreme Court held that a "municipality is only liable when the plaintiff can show that the municipality itself, by implementing a municipal policy, regulation or decision either

formally adopted or informally adopted through custom, actually caused the alleged constitutional transgression." 436 U.S. at 691; *see also id.* at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). In other words, to state a claim under *Monell*, "a plaintiff must establish that (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom." *Ekwunife v. City of Phila.*, 245 F.Supp.3d 660, 673–74 (E.D. Pa. 2017) (citing *Monell*, 436 U.S. at 692–94). To appropriately plead a *Monell* claim, Plaintiff must identify a policy or custom and then "plead facts demonstrating a 'direct causal link between [the] policy or custom and the alleged constitutional deprivation.'" *Id.* at 675 (quoting *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007)). "A policy is made when a decisionmaker possessing the final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict[, and a] custom is an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotes and citations omitted).

### 1. Unconstitutional Policy

The first requirement of the *Monell* test is for Plaintiff to establish that "the municipality had a policy or custom that deprived the plaintiff of his constitutional rights." *Ekwunife*, 245 F.Supp.3d at 674 (citing *Monell*, 436 U.S. at 692–94). Plaintiff plausibly asserts that the City's policy under Philadelphia Code Section 12-2406 unconstitutionally deprives Plaintiff and other car owners of a meaningful post-deprivation hearing in violation of her procedural due process

rights "because the scope of a hearing under Philadelphia Code section 12-2406(1)(a) is too limited to resolve the amount of indebtedness a car owner had to pay to retrieve their vehicles." (ECF No. 28 at 23 ¶105(d).) Considering the allegations in the light most favorable to Plaintiff, Plaintiff's three requests for additional or substitute procedural safeguards, (1) coordination between the PPA and BAA regarding the amount of indebtedness; (2) a hearing to resolve Plaintiff's liability for the underlying tickets and the amount of indebtedness she had to pay to retrieve her vehicle; and (3) coordination between the PPA and BAA regarding the auction date of vehicles with the expiration date of Plaintiff's appeal period, would have been reasonable safeguards for her procedural due process rights. (ECF No. 28 at 10, 22–23 ¶¶ 68, 105(d), 106.) As such, Plaintiff has satisfied the first requirement of the *Monell* test.

The second requirement of the *Monell* test is for Plaintiff to establish that the municipality "acted deliberately and was the moving force behind the deprivation." *Ekwunife*, 245 F.Supp.3d at 674 (citing *Monell*, 436 U.S. at 692–94). Here, Plaintiff has sufficiently alleged that the enforcement of Philadelphia Code Section 12-2406 directly led to the violation of her procedural due process rights and the deprivation of her vehicle. Further, the City does not dispute that the hearing conducted by Defendant Barnes "was in line with the City code that allows City officials to demand payment of all tickets lodged against a car owner's name prior to releasing a vehicle." (ECF No. 30-1 at 16 (citing Phila. Code § 12-2406).) Therefore, Plaintiff has satisfied the second requirement of the *Monell* test.

The third requirement of the *Monell* test is that the "plaintiff's injuries were caused by the identified policy or custom." *Ekwunife*, 245 F.Supp.3d at 674 (citing *Monell*, 436 U.S. at 692–94). Plaintiff alleges that she, and others similarly situated to her, lost her vehicle and suffered monetary damages for that loss because she received a post-deprivation hearing on probable cause, not the

merits, pursuant to the City's policy under Philadelphia Code Section 12-2406. (ECF No. 28 at 25 ¶ 107(g)-(h); ECF No. 32 at 7.) Considering the allegations in the light most favorable to Plaintiff, she has sufficiently alleged that had she received a post-deprivation hearing on the merits with her requested additional or substitute procedural safeguards, she would not have suffered the injuries she did. Therefore, Plaintiff has satisfied the third requirement of the *Monell* test.

Considering the three requirements of the *Monell* test, Plaintiff has adequately pled a municipal liability claim regarding an unconstitutional policy. Therefore, the Court denies the City's motion to dismiss Count I.

### 2.      Failure to Train

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A municipality can be liable under *Monell* for failure to train its employees, "if the failure to train 'amount[s] to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Ekwunife*, 245 F.Supp.3d at 674 (quoting *Connick*, 563 U.S. at 61)) (alterations in original) (internal quotation marks omitted). Failure to train "employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *Kline ex rel. Arndt v. Mansfield*, 255 F. App'x 624, 629 (3d Cir. 2007) (quoting *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)). Although "rare," a single incident may establish deliberate indifference if the "consequences of failing to train could be so patently obvious." *Ekwunife*, 245 F.Supp.3d at 675 (citing *Connick*, 562 U.S. at 63). "[I]n order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the

situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)).

In her SAC, Plaintiff introduces the allegations that the BAA fails to train its BAA hearing officers. (ECF No. 28 at 12–13, 22–23 ¶¶ 77–78, 105(b)–(c), (e).) Specifically, Plaintiff alleges that "[t]he ordinances and regulations governing the BAA have no requirement for the training, education, evaluation, or certification of hearing officers. . . As a result, Ms. Barnes was untrained." (*Id.* at 12–13 ¶¶ 77–78 (citing Phila. Code § 12-3010; Regulation of the BAA §§ 1.01–6.02).) However, these allegations are insufficient because the Plaintiff has not alleged the City's deliberate indifference. Here, the Court agrees with the City that Plaintiff failed to sufficiently allege facts "to establish that and/or how all BAA hearing officers are insufficiently trained to perform their functions, such that those hearing officers exhibited a pattern of similar due process violations on other car owners, beyond Plaintiff." (ECF No. 30-1 at 20.)

Defendant Barnes properly performed her duties pursuant to Philadelphia Code Section 12-2406. (*See id.* at 16 (citing Phila. Code § 12-2406).) Plaintiff concedes that hearing officers are acting pursuant to the City's policy under Section 12-2406. (ECF No. 32 at 9 ("If the BAA's hearing officers are trained at all, they are trained under Phila. Code Section 12-2406(2) to condition the release of vehicles on the payment of all tickets a car owner owes on any vehicle, not just the impounded vehicle.").) The City had no obligation to train hearing officers beyond its current policy. As such, it is clear that the proper subject of Plaintiff's *Monell* liability claim is the policy itself, not failure to train under that policy. Therefore, the Court will dismiss Plaintiff's failure-to-train claim.

### D.      Failure to Exhaust Administrative Remedies

The City argues that the Court does not have jurisdiction over Count I of Plaintiff's SAC because she failed to exhaust her administrative remedies within the Philadelphia Regulations of the BAA §§ 6.01, *et seq*.

"The Supreme Court has consistently noted that exhaustion of state remedies, whether judicial or administrative, is not required prior to the commencement of an action under 42 U.S.C. § 1983 in federal court." *Hochman v. Board of Ed. of City of Newark*, 534 F.2d 1094, 1096 (3d Cir.1976). However, a plaintiff suing under Section 1983 for procedural due process violations must take "advantage of the processes that are available to him . . ., unless [they] are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (internal citations and quotation marks omitted); *see also Mariano v. Borough of Dickson City*, No. CIV.A. 3:13-0097, 2013 WL 6234622, at *3 (M.D. Pa. Dec. 2, 2013) (citing *Garzella v. Borough of Dunmore*, 280 Fed. Appx. 169, 173 (3d Cir. 2008)) ("[A] plaintiff alleging a procedural due process violation must pursue that process before seeking redress in the courts, unless the grievance process is blocked or there is evidence that it is a sham."). "The aim of Section 1983 is to offer a remedy in federal court for plaintiffs whose civil rights are violated '*supplementary to any remedy any State might have*.'" *Schimes v. Barrett*, No. 3:07cv872, 2010 WL 1330179, at *5 (M.D. Pa., March 30, 2010) (quoting *Hochman*, 534 F.2d at 1096) (emphasis added).

Here, Plaintiff's allegations hinge on whether the hearing available to her was "meaningless" because she needed a hearing in which she could receive a determination of the amount she owed to recover her vehicle, but instead Plaintiff received a hearing on probable cause for the impoundment of her vehicle. An in-depth analysis of whether Plaintiff was required to exhaust the available administrative remedies or whether the available procedures were "patently

inadequate" gets to the crux of Plaintiff's procedural due process claim. As such, the Court denies the City's motion to dismiss Count I based on Plaintiff's failure to exhaust administrative remedies.

### E.    Declaratory Judgment

The parties have fully briefed a complex, thought-provoking legal question. However, in this instance, there is no vehicle here for the Court to address Count II of Plaintiff's SAC. As Ms. Ferebee is an improper plaintiff to seek this declaratory judgment.

The Declaratory Judgment Act, Section 7533 states: "Any person . . . whose rights, status, or other legal relations *are affected by* a statute [or] municipal ordinance . . . may have determined any question of construction or validity arising under the . . . statute [or] ordinance . . ., and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa. Stat. and Cons. Stat. Ann. § 7533 (emphasis added). The ordinance at issue states: "The owner or any person on behalf of the owner may obtain immediate release of the vehicle by the payment in full of all delinquent parking tickets *issued to any and all vehicles registered in the name of the owner of the vehicle that is to be recovered*, booting and/or towing fee and accrued storage charges." Phila. Code. § 12-2406(2) (emphasis added).

Here, Plaintiff was not affected by the City's ordinance, Philadelphia Code Section 12-2406(2). Rather, Plaintiff was affected by the BAA's alleged actions which, based on the letter of the law, were not authorized by the ordinance. Taking the allegations in the SAC in the light most favorable to Plaintiff, the City's ordinance did not apply to her. Plaintiff owned the impounded vehicle, a 2010 Dodge Grand Caravan. (ECF No. 28 at 3 ¶¶ 14, 16.) To obtain the release of the impounded vehicle, Plaintiff was told to pay in full the delinquent parking tickets issued to vehicles owned by Plaintiff *and* her mother. (*Id.* at 6 ¶¶ 39–40.) Tickets for cars registered to Plaintiff's mother were not "delinquent parking tickets issued to any and all vehicles registered in the *name*

*of the owner of the vehicle that is to be recovered.*" Phila. Code. § 12-2406(2) (emphasis added). As such, Plaintiff was affected by the BAA's allegedly unauthorized actions and not having an ability to challenge the BAA applying the ordinance to her, not the ordinance itself. Therefore, Plaintiff does not have the proper standing to bring this declaratory judgment claim against Defendants.

For the reasons stated by the Court, Count II of Plaintiff's SAC is dismissed without prejudice.

## V.     CONCLUSION

For the foregoing reasons, the Court dismisses the claims against the Individual Defendants Nycole Macklin, Scott A. Petri, Dennis G. Weldon, Jr., Omika Barnes, and Michael Giunta with prejudice. The Court dismisses the Section 1983 procedural due process claim against PPA only. The Court grants both Defendants' motions to dismiss the declaratory judgment claim.

An appropriate order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge

_____

**HODGE, KELLEY B., J.**